UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SCALES and
MICHELE VERNET,

CASE NO. 04-CV-72529-DT
HON. LAWRENCE P. ZATKOFF

      Plaintiffs,

vs.

BOB EVANS RESTAURANT, INC.,

      Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on July 20, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion for Summary Judgment. Plaintiff Anthony Scales (hereinafter, "Plaintiff")[1] has filed a response and Defendant has replied. The Court finds that the facts and legal arguments pertinent to the Defendant's Motion are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

---

[1] Plaintiff Michele Vernet's claims against Defendant (Counts IV and V of the Complaint) were dismissed with prejudice on June 8, 2005, pursuant to the stipulation of Ms. Vernet and Defendant.

## II. BACKGROUND

**A.     Facts**

Plaintiff interviewed with Defendant's Area Director, Kevin Andrachek ("Andrachek"), for the position of manager with Defendant Bob Evans Restaurant, Inc., and Andrachek hired Plaintiff in the summer of 2003. Before someone can become a manager at a Bob Evans restaurant, he or she must work as a Manager-in-Training ("MIT") and pass through an extensive fourteen-week training program (the "MIT program"). On September 4, 2003, Plaintiff commenced working as an MIT at the Bob Evans restaurant in Dearborn, Michigan. The General Manager of the Dearborn restaurant was Qasem Khasawneh ("Kass"). Shortly after beginning work at the Dearborn restaurant, Plaintiff was written up by an assistant manager for calling an hourly employee an "old hag." On October 29, 2003, Plaintiff failed to attend a mandatory, off-site training session with Andrachek. On the same day, Andrachek notified Kass that he should terminate Plaintiff's employment for failure to show up for training. Upon notification by Kass that he was being fired, Plaintiff appealed his termination to Andrachek and a meeting was set up between Kass, Andrachek and Plaintiff on October 31, 2003.

At the October 31, 2003, meeting, Plaintiff explained to Andrachek that he had been working at the Dearborn restaurant on October 29, 2003, and had mixed up the days on which he was supposed to train with Andrachek. Plaintiff also complained to Andrachek for the first time that Kass had mistreated him, which mistreatment allegedly included the following comments made by Kass: (1) "You cannot pick and choose who you are going to help" and/or "you cannot pick and choose who you talk to - you only seem to talk to your people and other people are noticing that," (2) "I don't think you are dumb. [Y]ou think you are dumb because you are black. You cannot walk around thinking like this," (3) "you have to stop thinking everyone is out to get [you] because [you're] black," and (4) "When you walk through the doors, you should forget that you're black because people pick up on that and could label you a racist." Plaintiff also complained that Kass told him that Plaintiff "moved too slow" and that Plaintiff's subordinates did not like the way

Plaintiff "talked to them." Kass denied such statements. At the conclusion of the two hour meeting, Andrachek rescinded Plaintiff's termination but laterally transferred Plaintiff to a Bob Evans restaurant in Canton, Michigan, in order to give Plaintiff a fresh start. Plaintiff did not object to the transfer at that time.

The Canton restaurant was managed by a different General Manager, Judy Walls ("Walls"). Plaintiff began working at the Canton location the next day, November 1, 2003, and his position and pay rate remained the same. Plaintiff was promoted to Assistant Manager at the Canton restaurant approximately six weeks after beginning work there, on December 11, 2003. Approximately one month later, in January 2004, Walls issued Plaintiff a written reprimand (or "write-up") when he parked in a space reserved for carry-out customers only, after having been verbally reprimanded for the same conduct on two prior occasions. Plaintiff admitted parking in the space repeatedly, but set forth a number of excuses in writing for doing so. On March 10-12, 2004, Walls reprimanded Plaintiff for performance deficiencies on three consecutive days, including twice on one day. Plaintiff told Walls on at least two occasions that he believed some of the March reprimands were based on race and claims that on March 11, 2004, Walls said: "I betcha you are going to say that I am out to get you because you are a black man."

On March 11, 2004, Plaintiff called Andrachek to speak to him about the treatment by Walls, the first time he had complained to Andrachek about Walls. On March 16, 2004, Plaintiff met with Andrachek and Walls, at which time Andrachek assured Plaintiff that Bob Evans was not trying to terminate him and that Andrachek would monitor the situation with Walls. On March 25, 2004, Andrachek met with Plaintiff again and presented Plaintiff with a memo regarding the meeting they had with Walls on March 16, 2004, which memo Plaintiff signed. On March 26, 2004, Plaintiff filed a complaint of racial discrimination against Defendant with the Michigan Department of Civil Rights. On March 28, 2004, Andrachek issued a write-up to Walls instructing her to treat all managers consistently and professionally. On April 5, 2004, Andrachek and Plaintiff met again to follow-up on Plaintiff's concerns. On April 9, 2004, Andrachek met with Walls and Plaintiff again

3

and informed Plaintiff that, after reviewing all of the write-ups issued by Walls against Plaintiff, the write-ups issued to Plaintiff in March would be withdrawn from his personnel file. On the same day, Walls apologized to Plaintiff for the comment she made on March 11, 2004. On April 9, 2004, Walls also notified Andrachek of her resignation, to be effective as of May 1, 2004.

On April 15, 2004, Plaintiff telephoned the Canton restaurant and indicated that he wanted to take a medical leave of absence for what he claims was "extreme, relentless job stress," and Defendant granted him such leave. Plaintiff filed the instant lawsuit on June 8, 2004, alleging that Defendant subjected him to (a) racial discrimination, (b) retaliation for exercising his rights, and (c) a hostile work environment. On June 14, 2004, after not contacting anyone at Bob Evans since being granted the medical leave of absence (other than for purposes of having such leave extended), Plaintiff submitted a voluntary letter of resignation.

**B.      Plaintiff's Allegations**

In his depositions, Plaintiff testified that within the first month of his employment at the Dearborn restaurant, he suffered "abuse" and experienced a "hostile environment." He also stated that "racial discrimination and harassment was not isolated, rather it was relentless," as evidenced by Kass's comments noted in Section II.A.(1) - (4) above. Although he did not oppose his transfer when it occurred, Plaintiff now contends that Andrachek failed to fully investigate Plaintiff's claims of discrimination and hostile work environment. Plaintiff argues that there were two Bob Evans restaurants closer to his home than the one in Canton and that Andrachek sent him to work for Walls even though Andrachek was aware that she had serious problems managing her anger and her employees.

In support of his claims, Plaintiff relies on the testimony of Bob Evans employee Russell Broom, who stated that Kass had said "no good nigger" on two occasions prior to the commencement of Plaintiff's employment and who heard Kass telling Plaintiff that he "could not pick and choose when you want to seat." Mr. Brooms also testified to numerous incidents of inappropriate, profane, disrespectful comments of Kass toward his employees, including calling a

4

female Assistant Manager a "bitch" and openly ridiculing a male bi-sexual Assistant Manager about his homosexuality. Lakeisha McGhee, a former Assistant Manager at the Bob Evans Dearborn restaurant, likewise testified to Kass's abusive treatment toward his employees and testified that Kass managed his employees by intimidation. Ms. McGhee also testified that Kass called Plaintiff a racist and that Kass disciplined her, an African American female, for conduct for which Kass did not discipline a white female Assistant Manager.

Once he was transferred to Canton, Plaintiff claims he lost the entire eight weeks of training at the Dearborn restaurant when he was transferred to Canton and that, as such, he had to be completely retrained and he was never permanently assigned to a Bob Evans' restaurant as an Assistant Manager. Plaintiff contends that Walls subjected him to racial discrimination, a hostile work environment and retaliation. Plaintiff testified that Walls (1) cursed at her employees and used profanity, (2) gave Plaintiff several disciplinary write-ups for conduct for which a white Assistant Manager did not receive write-ups, (3) referred to her African American Assistant Managers as "dumb" and "lazy," (4) called non-management African American employees "crack heads," (5) threatened Plaintiff with termination when he filed a complaint of discrimination with the Michigan Department of Civil Rights, (6) made inappropriate references to Plaintiff's race when saying "I bet you are going to claim I am doing this because you are black," (7) allowed Kass to frequent the Canton restaurant, (8) stripped him of all management responsibilities and duties during the last month he worked at the Canton restaurant, and (9) asked a female non-management employee to say that Plaintiff had approached her for a sexual favor.

In support of his claims as they pertain to the Canton restaurant, Michele Vernet, a white former Assistant Manager at the Canton store testified that Walls referred to her African American Assistant Managers as "fucking dummies" and said they were "lazy". Ms. Vernet also stated that Walls said to Plaintiff "what excuse are you gong to use this time black man" and supported Plaintiff's claim that he was disciplined and harassed for certain things that a white Assistant Manager was not. Paula Mendelssohn, a white female employee, testified that Walls asked her if

5

Plaintiff made any sexual comments to her. Numerous witnesses testified to Walls' excessive profanity and abuse of employees.

### III.  LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support, show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS

**A.        Racial Discrimination**

Under Michigan law, a plaintiff can prove a claim of employment discrimination by showing either intentional discrimination or disparate treatment by the defendant. *Jenkins v. American Red Cross*, 141 Mich.App. 785, 793-94 (1985) (citations omitted). In order to prevail on an intentional discrimination claim, a plaintiff must show (a) he was a member of affected class, (b) he was suffered an adverse employment action, (c) the person discharging him was predisposed to discriminate against persons in the affected class, and (d) such person had actually acted on that disposition in taking the adverse employment action. *Id.* (*citing Civil Rights Comm. v. Chrysler Corp.*, 80 Mich. App. 368, 373 n.3 (1977)).  In order to establish a *prima facie* case of discrimination on the basis of disparate treatment, a plaintiff must show: (1) he is a member of a protected class, (2) he was performing his job satisfactorily, (3) he suffered an adverse employment action, and (4) the employer treated similarly situated employees outside of the protected class more favorably. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004); *Jackson-Colley v. Dept. of Army Corp of Eng.*, 655 F.Supp. 122, 129 (E.D. Mich. 1987).  In either case, therefore, a plaintiff must show that there was an adverse employment action in order to prevail in a race discrimination suit. In the present case, the Court finds that Plaintiff cannot do so, as a matter of law.

Under Michigan law, an employment action is adverse only if the following two requirements are satisfied:

> (1) the action must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities; and (2) there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling.

*Wilcoxon v. Minn. Mining & Mfg. Co.*, 235 Mich.App. 347, 364 (1999) (internal quotations and citations omitted).  Plaintiff cites four events which he believes constitute adverse employment actions.

*1.     October 29, 2003 "Termination"*

Plaintiff argues that "he was fired by Defendant Bob Evans' General Manager Kass for allegedly having complaints by his co-workers and missing a training meeting. This is an adverse employment action." The Court agrees that being fired by one's employer generally constitutes an adverse employment action. In this case, however, Plaintiff was reinstated to his MIT position within three (3) days, without a loss of title, responsibilities, rights, pay or benefit. As such, the Court concludes that there is no genuine issue of material fact which could be construed as supporting a finding that the October 29, 2003, "termination" was an adverse employment action. Moreover, even if there was an adverse employment action with respect to the "termination" and that "termination" was not cured by the reinstatement, Plaintiff fails to even allege that the October 29, 2003, "termination" was precipitated by race discrimination, harassment and/or retaliation. Rather, as evidenced by Plaintiff's own words above, the "termination" was the result of his missing a meeting with Andrachek and complaints by his co-workers.

*2.     Plaintiff's Transfer*

Plaintiff maintains that the transfer of his work location from the Dearborn restaurant to the Canton restaurant, allegedly resulting in his loss of eight weeks of training in the MIT program and the failure of Defendant to promote him to Assistant Manager, was an adverse employment action. A transfer generally is not considered an adverse employment action. *See Wilcoxon*, *supra* (lateral job transfer did not constitute adverse employment action); *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 2005 WL 356512 (8th Cir.); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270 (7th Cir. 1996) (transfer involving no more than a minor change in working conditions will not constitute an adverse employment action).

In his deposition testimony, Plaintiff acknowledged: (a) there was no change in his salary or benefits as the result of the transfer, (b) he continued in the MIT program at the Canton restaurant, with the same duties and responsibilities as he had at the Dearborn restaurant, and (c) he was promoted to Assistant Manager within six (6) weeks after he was transferred to Canton. Plaintiff's

8

Dep. 11/30/04, p. 103-04. Accordingly, the Court finds no merit in Plaintiff's contention that he was denied a promotion or never attained the position of Assistant Manager with the Defendant.

The Court also finds no merit in Plaintiff's claim that he lost eight (8) weeks of training and had to be retrained as an MIT. The record reflects that Plaintiff may have been behind in his managerial training at the time of his transfer. Plaintiff's Dep. 12/1/04 at 62 ("somebody assessed that I did not know the things that I should know at this part in my management . . . [and] basically, that I was going to be speed-tracked through and all of those things that Kass didn't teach me I was going to be taught over again."). However, whether as the result of accelerated training or otherwise, Plaintiff became an Assistant Manager on December 11, 2003, exactly fourteen (14) weeks after he commenced the MIT program. Therefore, the transfer not only did not preclude him from becoming an Assistant Manager, the transfer did not even delay his managerial track.

Accordingly, the Court concludes that Plaintiff did not suffer an adverse employment action when he was transferred.

### 3. *Managerial Duties*

Plaintiff claims that he suffered an adverse employment action during his last month of employment because Walls stripped him of his Assistant Manager responsibilities. The Court's review of the record reveals that the only support for that claim are two self-serving statements made by Plaintiff during his deposition at the end of calendar year 2004. *See* Plaintiff's Dep. 11/30/04 at 129-30; Plaintiff's Dep. 12/1/04 at 83. For the reasons that follow, the Court is not persuaded that such statements constitute significant probative evidence that defeat the motion for summary judgment. *See Moore, supra; Anderson, supra*.

First, Plaintiff acknowledged that he remained an "Assistant Manager" in title. Second, there is no evidence on the record, nor is there any claim of Plaintiff that his pay or benefits was modified during the time of the alleged demotion. Third, the above self-serving statements made by Plaintiff at his deposition do not comport with his actions and comments in March and April 2004, when the alleged stripping of responsibilities and duties occurred. During that time, Plaintiff clearly and

9

repeatedly voiced his concerns regarding his treatment by Walls, including filing his complaint of race discrimination with the Michigan Department of Civil Rights and his multiple meetings with Andrachek (some of which were held with Walls present and others were not). Notwithstanding the many issues Plaintiff reported having with Walls, there is no evidence from the notes or summaries of such meetings that Plaintiff mentioned that Walls had revoked his managerial responsibilities and duties or that she had relegated him to being a server. In fact, in the summaries and notes regarding those meetings, the parties to such meetings (Plaintiff, Walls and Andrachek) discussed how Plaintiff must act as a manager and Plaintiff himself focused on his managerial duties.

Fourth, on more than one occasion in those meetings in late March and early April 2004, Plaintiff acknowledged that his concerns which had precipitated the meetings were being addressed. Fifth, the uncontroverted evidence on the record demonstrates that on April 5, 2004, Andrachek asked Plaintiff what Andrachek/Bob Evans needed to do to make the situation between Plaintiff and Walls better and Plaintiff said that he could not think of anything. Sixth, Plaintiff's Complaint is void of any allegation that Walls, Andrachek or any other person employed by Defendant stripped him of, or prevented him from having, managerial responsibilities or exercising his duties as Assistant Manager at any time while Plaintiff was employed by Defendant. Seventh, the record contains no affidavits or deposition testimony of any other persons who support Plaintiff's conclusory claims that he had been stripped of his managerial responsibilities. The Court finds that void significant because (1) Plaintiff has submitted affidavits in support of virtually every other aspect of his case, and (2) it would have been clear to employees at the Canton restaurant that Plaintiff was working merely as a server, without managerial or supervisory authority.

Accordingly, even viewing the evidence in a light most favorable to the Plaintiff, the Court concludes that the evidence on the record is, at best, merely colorable and creates only a metaphysical doubt as to whether Plaintiff was demoted. *See Moore, supra.* Nothing on the record is significantly probative such that summary judgment should not be granted. *See Anderson, supra.*

*4.     Constructive Discharge*

Plaintiff argues that he "was constructively discharged after being forced to resign June 12, 2004 because of intolerable working conditions." The Court finds that the record does not support that contention. To the contrary, all of the evidence on the record demonstrates that Defendant made every effort to ensure that Plaintiff's employment continued. In fact, in the month before Plaintiff commenced his leave of absence, Andrachek had multiple meetings with Plaintiff in which he explicitly told Plaintiff that there was no desire on the part of Defendant (including himself and Walls) to terminate Plaintiff. Numerous meetings were held in furtherance of resolving outstanding issues between Plaintiff and Walls. No documentations were issued against Plaintiff once he complained of treatment and/or write-ups by Wells in March 2004, including no write-ups in the 30 days before he commenced his medical leave of absence. In addition, several written documentations were removed from Plaintiff's file by Andrachek and a write-up was given to Walls for her treatment of employees in late March and early April 2004. Morever, the person with whom Plaintiff allegedly had a difficult relationship (Walls) notified Defendant that she was resigning, effective May 1, 2004, prior to Plaintiff going on his medical leave of absence on April 15, 2004.

Having reviewed the record, the Court ascertained that there were not, at any time, threats, ultimatums or other contingent thresholds (other than the expectation that Plaintiff would perform the normal duties of an Assistant Manager) imposed upon Plaintiff by the Defendant, nor was Plaintiff required to satisfy any conditions (other than performance of his normal duties), in order to keep his job, including any demand that he complete his leave and get back to work. This was true, even though Plaintiff (a) did not complete the paperwork for his leave until after Andrachek dropped the paperwork off at his house on April 20, 2003, and (b) subsequently requested an extension to his leave of absence (which Defendant granted). Accordingly, the Court finds that Plaintiff's alleged "constructive discharge" did not constitute an adverse employment action by Defendant.

11

*5.     Conclusion*

As the Court has concluded that Defendant did not subject Plaintiff to any adverse employment action, Plaintiff cannot satisfy all of the requisite elements of his race discrimination claim. Accordingly, the Court hereby DISMISSES Plaintiff's claim of race discrimination (Count I of the Complaint).

**B.     Retaliation**

In order to establish a *prima facie* case of retaliation under Michigan law, a plaintiff must show: (1) he engaged in a protected activity, (2) defendant was aware of his protected activity, (3) defendant took an employment action adverse to plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432 (1997); MCL § 37.2701. As discussed in Section II.A. above, the Court finds that there was no adverse employment action taken by Defendant against Plaintiff. Accordingly, the Court concludes that, as a matter of law, Plaintiff cannot satisfy all of the requisite elements of a retaliation claim. Therefore, the Court DISMISSES Plaintiff's retaliation claim (Count II of the Complaint).

**C.     Hostile Work Environment**

In order to establish a *prima facie* case of hostile work environment under Michigan law, a plaintiff must show: (1) he belonged to a protected group, (2) he was subjected to communication or conduct on the basis of race, (3) he was subjected to unwelcome racial conduct or communication, (4) the unwelcome racial conduct or communication was intended to or in fact did substantially interfere with his employment or created an intimidating, hostile or offensive work environment, and (5) *respondeat superior*. *Radke v. Everett*, 442 Mich. 368, 382-83 (1993); MCL §§ 37.2103(h), 27.2202(1)(a). Significantly, an employer is liable for the existence of a hostile work environment under a theory of *respondeat superior* only if

> [P]laintiff present[s] sufficient evidence to demonstrate that defendant "failed to rectify a problem after adequate notice." [] That is, whether defendant failed to take prompt and appropriate remedial action after receiving adequate notice that [defendant's employee]

> was . . . harassing plaintiff. . . . Finally, we emphasize that the relevant inquiry concerning the adequacy of the employer's remedial action is whether the action reasonably served to prevent future harassment of the plaintiff.

*Chambers v. Trettco, Inc.*, 463 Mich. 297, 318 (*quoting Radke*, 442 Mich. at 395).

In this case, there are two separate instances where Plaintiff could be said to have provided Defendant (namely, Andrachek) notice of a hostile work environment. The first time was on October 31, 2003, at the meeting to discuss Plaintiff's "termination" on October 29, 2003. At that meeting, for the first time, Plaintiff provided Andrachek (and Kass) with notice of the times that Kass allegedly harassed him since Plaintiff commenced his employment with Defendant. Therefore, assuming solely for purposes of this Opinion that such harassment did exist, the earliest date any representative of Defendant had notice of such harassment and could have taken any remedial action was October 31, 2003.

The Court finds that when Plaintiff produced a written document outlining Kass's harassment of Plaintiff at the October 31, 2003, meeting, Andrachek did address Plaintiff's concerns in a number of ways: (a) discussing the matter with Kass and Plaintiff, (b) reinstating Plaintiff's employment, and (c) transferring Plaintiff, without objection, to the Canton restaurant. Such remedial action was immediate and was "reasonably served to prevent future harassment of the plaintiff" because Plaintiff and Kass would no longer interact with one another. Furthermore, at the time of the transfer, there was no reason to believe a transfer to the Canton restaurant would result in Plaintiff being subject to any racial discrimination. The Canton restaurant was managed by a General Manager who oversaw three African-American Assistant management employees, none of whom had ever complained of racial discrimination (nor had any other employees).

The second time Plaintiff provided Defendant with notice that he allegedly was subjected to racial harassment was on March 11, 2004, after Walls' comment that "I bet you are going to say that I am out to get you because you are a black man." This was the first date Plaintiff contacted Andrachek regarding harassment allegations of any kind since October 31, 2003. It was also the first time Plaintiff had mentioned to Andrachek that Walls was harassing him. At that time,

Andrachek set up a meeting with Plaintiff and Walls for March 16, 2004, to discuss the matter. An additional meeting was scheduled for and held on March 25, 2004. On March 28, 2004, Andrachek issued a write-up to Walls instructing her to treat all managers consistently and professionally. On April 5, 2004, Andrachek spoke to Plaintiff again, and on April 9, 2004, Walls, Plaintiff and Andrachek met again. At that meeting, Andrachek rescinded all of the write-ups issued to Plaintiff in March 2004, and Walls apologized for her comment. Therefore, from the time that Andrachek met with Plaintiff very soon after Plaintiff notified him of the alleged harassment by Walls, Andrachek set up meetings, disciplined Walls and rescinded any write-ups against Plaintiff which could have been attributed to harassing behavior by Walls. In short, Defendant (through Andrachek) engaged in prompt and appropriate remedial action to prevent future harassment of Plaintiff as soon as Andrachek was notified of the alleged harassment in March and April 2004.

For the reasons set forth above, the Court finds that Plaintiff cannot establish all of the requisite elements of a *prima facie* hostile work environment claim. Accordingly, the Court DISMISSES Plaintiff's hostile work environment claim (Count III of the Complaint).

## V. CONCLUSION

Accordingly, and for the reasons set forth above, the Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is hereby DISMISSED WITH PREJUDICE. Judgment shall be entered accordingly.

IT IS SO ORDERED.

                                                  s/Lawrence P. Zatkoff
                                                  LAWRENCE P. ZATKOFF
Date: July 20, 2005                           UNITED STATES DISTRICT JUDGE